IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION



MAY 2 2 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim No. 4:14-CR-81 (12) |
| | ) | Judge Amos L. Mazzant |
| vs. | ) | |
| | ) | MOTION FOR REDUCTION |
| IGNACIO AGUILAR-CARDENAS, | ) | OF SENTENCE PURSUANT |
| Defendant. | ) | TO 18 USC § 3582(c)(1)(A) |
| | ) | |

Defendant Ignacio Aguilar-Aguilar pro se, respectfully
moves this court to reduce his sentence pursuant to 18 U.S.C.
§ 3583(c)(1)(A), on the basis that "extraordinary and
compelling reasons" warrants relief. Due to the evolving
changes in law and facts that were never available or raised
in the previous motion, the Court has discretion to consider
Aguilar's extraordinary and compelling reasons in light of
Concepcion v. United States, 142 S. Ct. 2389 (2022), and the
Sentencing Commission's amendment to U.S.S.G. § 1B1.13, and
the compassionate release provision of § 3582(c).

PRELIMINARY STATEMENT

Ignacio Aguilar-Cardenas ("Aguilar"), a first time offender, is serving a life sentence for a non-violent drug offense. Had Aguilar been sentenced today, he would not have been subject to a life sentence in light of numerous changes in law applicable to his case and circumstances.

The First Step Act, passed by Congress in 2018, recognized the harshness in certain sentencing provisions, along with the Bureau of Prison abuse of the compassionate release provision. The First Step Act also recognized that courts should have the authority to bring a belated measure of justice to defendants like Aguilar by granting motions for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) without requiring the imprimatur of the Bureau of Prisons ("BOP"). See First Step Act, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5238-38 (2018).

Aguilar is entitled to relief under this provision based on the U.S. Sentencing Commission's amendments of § 1B1.13, cmt. n.1(D) and the expansion of the definition of "extraordinary and compelling" reasons, considered in combination with Amendment 810, facts about the flaw of drug purity as a proxy for culpability within the methamphetamine Guidelines, Aguilar's family circumstances, and an unwarranted sentencing disparity that was never addressed in the previous proceeding.

Aguilar's mother is severely ill and requires his care in Mexico more than before. Aguilar has already served the mandatory minimum terms of his statute of conviction, and

during that time has grown into a mature, thoughtful, and responsible man. His rehabilitation includes his dedication to sobriety, his renewed connection with his family, devotion to his faith, and his commitment to live responsibly upon returning to Mexico upon deportation--if relief is granted. The Court should truly consider the significant differences in methamphetamine cases it imposed sentences against offenders convicted after trial or upon a guilty plea for identical conduct, but these offenders received significantly less terms of imprisonment than Aguilar. This aspect of § 3553(a)(6) was never adequately considered in the previous motion under § 3582(c)(1)(A). As this Court held in the previous motion under § 3582(c)(1)(A), it  had no reasons to consider the § 3553(a) because Aguilar failed to present extraordinary and compelling reasons warranting relief.

Aguilar is not asking the Court to release him, because he is aware that his crime of conviction is a serious offense. However, Aguilar requests that the Court exercise its broad discretion and reduce his life sentence to a term sufficient but not greater than necessary.

BACKGROUND

Aguilar was convicted pursuant to a guilty plea in the absence of a plea agreement, for conspiracy to possess with intent to distribute amphetamine and methamphetamine. 21 U.S.C. § 846. On March 7, 2016, the Court calculated Aguilar's Guidelines range at base offense level 38. A two point enhancement was imposed for importation of methamphetamine or

manufacturing of methamphetamine, pursuant to U.S.S.G. § 2D1.1(b)(5). An additional three points was imposed for leadership role pursuant to U.S.S.G. § 3B1.1(b), bringing the base offense level to 43, in CHC I. Aguilar was never afforded the three points reduction for acceptance of responsibility, and the Court imposed a life imprisonment term.

On December 14, 2016, Aguilar's direct appeal was dismissed as frivolous pursuant to Anders v. California, 386 U.S. 738 (1967). On September 6, 2017, Aguilar filed a habeas motion under 28 U.S.C. § 2255, which was denied on September 30, 2020. Aguilar filed his first Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), which was denied by this Court.

## ARGUMENT

Aguilar's life sentence for a first time offender, for a non-violent drug offense is egregious when viewed in light of other methamphetamine cases in which defendants with lengthy criminal history and similar or greater quantity of drugs, were sentenced to lesser terms of imprisonment. Thankfully, Congress has now given this Court the authority to address issues as these through motions for a reduction in sentence under § 3582(c)(1)(A).

Given the changes to the First Step Act, district judges have found that they may consider any "extraordinary and compelling" reasons raised by defendants and are not constrained by the policy statement at U.S.S.G. § 1B1.13. United States v. Cooper, 996 F.3d 283 (5th Cir. 2021); United

4

States v. Stepheson, 461 F. Supp. 3d 864, 869-70 (S.D. Iowa 2020); United States v. Pelichet, No. 19-cr-40033, 2020 WL 7053309, at *5 (D.S.D. Nov. 24, 2020).

Aguilar is similarly entitled to relief. Significant changes in the law, and the newly established Sentencing Commission's amendment of the compassionate release provision, including an expansion of the definition of "extraordinary and compelling reasons" warrants adequate consideration by this Court. In combination with other district courts disagreement with the methamphetamine Guidelines under § 2D1.1, cmt. n.(27), and the visibly unwarranted sentencing disparity herein, this Court can reduce Aguilar's sentence to a term sufficient but not greater than necessary to satisfy § 3553(a).

A.  The Court Has Authority to Grant the
    Requested Relief

Under the amended statute, a court can now reduce a sentence for "extraordinary and compelling" reasons upon motion of a defendant if he or she has exhausted administrative review of a BOP refusal to bring a motion or 30 days have elapsed from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); see also United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020)("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed to district court if his request is not acted on within that time");

United States v. Brooker, 976 F.3d 228, 237 (2d Cir.
2020)(noting Congress's "clear intention" in passing the First
Step Act was to remove the BOP from its gatekeeper role).

Aguilar had presented a second request to the warden at
U.S.P. Atwater, for the BOP to file a motion for a reduction
in sentence on his behalf on 3 /27/2023. The request was
denied on 4 /12/2023. See Ex. 1, Request to Warden. However,
30-days has elapsed since the warden received the request,
thereby rendering authority to this Court to adjudicate
Aguilar's motion under § 3582(c)(1)(A) and the First Step Act.
See e.g. United States v. Brown, 457 F. Supp. 3d 691, 697
(S.D. Iowa 2020)(noting that § 3582 requires only that the
defendant request the BOP to make a motion on his behalf and
that "issue exhaustion is inappropriate").


B.  Aguilar Has Presented Extraordinary and
    Compelling Reasons Warranting Reduction
    in Sentence


Under § 3582, this Court may grant Aguilar's motion for a
reduction in sentence if it determines that his individual
circumstances present "extraordinary and compelling" reasons
warranting relief. That standard is satisfied here based on
the following grounds: (1) the newly established Sentencing
Commission's amendment of § 1B1.13 and the rule in Concepcion
v. United States, 142 S. Ct. 2389, that allows courts to
consider non-retroactive changes in law, and facts; (2)
Amendment 810 that set forth criteria for granting acceptance
of responsibility three-points reduction; (3) the U.S.

Commission's enactment of § 4C1.1 zero-points offenders category that allows downward variance for first time offenders with zero criminal history points; (4) district courts disagreement with the methamphetamine Guidelines provision under § 2D1.1; and (5) an unwarranted sentencing disparity between Aguilar's life sentence and sentences imposed by this Court upon other defendants with similar offenses, and criminal history, but received less terms than life imprisonment.

Accordingly, this Court has broad discretion to determine on a case-by-case basis whether the "extraordinary and compelling reasons" raised herein warrant a reduction in Aguilar sentence. Sentence reductions under § 3582(c)(1)(A) must be consistent with any applicable policy statement of the United States Sentencing Commission.

The previously-applicable policy statement promulgated by the Commission (which has not had a quorum in years, until late 2022) specified the circumstances that constitute extraordinary and compelling reasons warranting a sentence reduction: (A) the medical condition of the defendant (including terminal illness and other serious conditions and impairments); (B) the age of the defendant (for those 65 or older) with serious deterioration related to aging and who have completed at least 10 years or 75% of the term of imprisonment; (C) the family circumstances of the defendant (where a defendant's child's caregiver dies or becomes incapacitated, or the defendant's spouse or registered partner dies or becomes incapacitated and the defendant would be the only available caregiver); and (D) "Other Reasons." U.S.

7

Sent'g Guidelines Manual § 1B1.13 cmt. n.1(A)-(D) (U.S. Sent'g Comm'n 2021).

Pursuant to 28 U.S.C. § 994(g), the Commission intends to consider the issue of reducing costs of incarceration and over-capacity of prisons, to the extent it is relevant to any identified priority. And recently the newly formed Sentencing Commission amended specific Chapters of the United States Sentencing Guidelines, by expanding the definition of "extraordinary and compelling reasons" within § 1B1.13, cmt. n.1(D).

As relevant here, one of the Commission's amendment revised the provision currently found in Application Note 1(D) of § 1B1.13. It redesignated this category as "Other Circumstances" and expand the scope of the category to apply to all motions filed under 18 U.S.C. § 3582(c)(1)(A), regardless of whether such motion is filed by the Director of the BOP or the defendant. Such amendment to the extraordinary and compelling circumstances definition applies if, as a result of changes in the defendant's circumstances [or intervening events that occurred after the defendant's sentence was imposed], it would be inequitable to continue the defendant's imprisonment or require the defendant to serve the full length of the sentence. Aguilar extraordinary and compelling circumstances fits squarely within the Sentencing Commission's amendment for the May 2023 cycle.

Another amendment added two new subcategories to the "Medical Condition of the Defendant" category at new subsection (b)(1). The third amendment modified the "Family Circumstances" category at new subsection (b)(3) in three

ways. This amendment expanded the extraordinary and compelling reason for a defendant's incapacitated parent.

The Sentencing Commission's new amendments provides appropriate guidance that allow this Court to consider Aguilar's extraordinary and compelling reasons that differs from the ones he filed in his previous motion, and/or claims that were never adequately considered prior. The conclusion that this Court has broad discretion under the First Step Act to consider a variety of factors, including nonretroactive changes in the law, is entirely consistent with both the text and purpose of the First Step Act, which was expressly intended to "increase the use" of sentence reductions under § 3582. The Court's broad discretion to reduce Aguilar's life sentence is also supported by the Supreme Court's decision in Concepcion v. United States, 142 S. Ct. 2389, 2396 (2022). Since the rule in Concepcion was pronounced, appellate courts has agreed that district courts are required to consider changes in law and facts on motion under § 3582(c)(1)(A) and the First Step Act.

Under § 3582(c)(1)(A)(i), this Court may grant Aguilar's motion for a reduction in sentence if it determines that his individual circumstances present "extraordinary and compelling" reasons warranting relief. That standard is satisfied with Aguilar's extraordinary and compelling reasons argued below.

1. The Newly Established Sentencing Commission's
   Amendment of § 1B1.13's Definition of
   Extraordinary and Compelling Reasons

9

The U.S. Sentencing Commission proposed various amendments to the Sentencing Guidelines provisions, including § 1B1.13 and its "Other Reasons" category. U.S.S.G. § 1B1.13, App. Note 1(D). This amendment moved the list of extraordinary and compelling reasons from the Commentary to the guidelines itself as a new subsection (b). The new subsection (b) would set forth the same three categories of extraordinary and compelling reasons currently found in Application Note 1(A) through (C) (with the revisions described below), add two new categories, and revised the "Other Reasons" category currently found in Application Note 1(D). New subsection (b) would also provide that extraordinary and compelling reasons exists under any of the circumstances, or a combination thereof, described in such categories.

One of the amendments addressed § 1B1.13, cmt n.1(D)'s "Other Circumstances," states: As a result of changes in the defendant's circumstances [or intervening events that occurred after the defendant's sentence was imposed], it would be inequitable to continue the defendant's imprisonment or require the defendant to serve the full length of the sentence.

Another amendment made reference to Part B, that sets forth a new Chapter Four guideline, at 4C1.1 (Adjustment for Certain Zero-Point Offenders). New 4C1.1 would provide a decrease of [1 level][2 levels] from the offense level determined under Chapters Two and Three for zero point offenders who meet certain criteria. It provides two options for establishing the criteria.

The Sentencing Commission proposed an adjustment applicable to zero-point offenders with no prior convictions. Aguilar satisfies the criteria in option one, except for criteria 5 ("because he was categorized as an organizer, leader, manager, or supervisor of others in the offense as determined under 3B1.1"). However, because the sentencing guidelines are no longer mandatory, this Court can exercise its discretion in this manner to afford Aguilar the 2 levels decrease in his base offense level as a zero-point offender, under the Sentencing Commission's amendment that established the new § 4C1.1. In addition, the rule in Concepcion allows this Court to consider such new intervening changes in sentencing law on § 3582(c) Motion. The Supreme Court held in Concepcion v. United States, that district courts can consider changes in law and circumstances on motion pursuant to § 3582 and the First Step Act. Id. at 2396.

   2.   Amendment 810 Warrants Consideration of
        Acceptance of Responsibility Points


     Amendment 810 was established in 2018 as a response to concerns that some courts have interpreted the commentary to § 3E1.1 (Acceptance of Responsibility) to automatically preclude application of the 2-level reduction for acceptance of responsibility when the defendant makes an unsuccessful good faith, non-frivolous challenge to relevant conduct. Some circuits held that Amendment 810 is a retroactive amendment. See e.g. Geerken, 506 F.3d at 466; see also, United States v.

11

Carter, 662 F. App'x 342, 349 (6th Cir. 2016)(Amendment 810 is plainly a "clarifying," and therefore retroactive, amendment). A clarifying amendment applies retroactive, while a substantive amendment does not.

At Aguilar's sentencing proceeding, the Court did not afford him the Acceptance of Responsibility 2-points reduction. However, under Amendment 810, this Court can reconsider this matter and grant Aguilar the 2-points for acceptance of responsibility in light of his full acceptance outlined in his affidavit attached hereto. This would reduce Aguilar's sentencing exposure significantly, and provides a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing.

3. Policy Disagreement with the Methamphetamine Guidelines

Among district courts, there is a policy disagreement with the methamphetamine guidelines that constitutes extraordinary and compelling reasons warranting reduction in sentence. For example, in United States v. Hayes, 942 F. Supp. 2d 2009 (N.D. Iowa 2013), district judge Mark Bennett, held, "[I] followed the lead of two other federal district judges by reducing a methamphetamine defendant's advisory Guidelines sentence range by one third, on the basis of a policy disagreement with the methamphetamine Guidelines. This sort of variance was for low level, non-violent, addict offenders." Id. at 945. But see, United States v. Nawanna, 321 F. Supp. 3d 943 (N.D. Iowa May 1, 2018), attached hereto as Exhibit 2.

In Nawanna, Judge Bennett found that a similar reduction, based on a different calculation, was appropriate with a defendant (Nawanna) whose drug quantity was far more greater than that in Hayes. Nawanna was charged in Count 1 for conspiracy to distribute 500 grams or more of methamphetamine mixture containing 50 grams or more of actual (pure) methamphetamine, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846. Counts 2 and 3 charged that, Nawanna distributed 5 grams or more of actual (pure) methamphetamine, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B).

Nawanna pleaded guilty to all three counts of the Indictment without a plea agreement. The PSR indicates that Nawanna conspired with others to distribute at least 33.158 grams of actual (pure) methamphetamine and 4,406.39 grams of ice. Nawanna objected to the quantities attributed to him, but he did not dispute the resulting base offense level on procedural grounds. Nawanna was also attributed an aggravated role in the conspiracy, .

At sentencing, the three counts were grouped pursuant to U.S.S.G. § 3D1.2(d). Nawanna's base offense was calculated at level 36. His offense level was increased by two levels because a dangerous weapon was used, then increased by 3 levels as an adjustment for his role as a manager or supervisor (but not an organizer or leader). This increased Nawanna's base offense level to 41. Nawanna was granted a three level reduction for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b). This reduced the base offense level to 38, in Criminal History Category V. This resulted in an advisory Guidelines range of 360 months to

life.

At Nawanna's sentencing hearing, Judge Bennett reiterated his position regarding the flaw and disagreement with the methamphetamine guidelines under § 2D1.1, cmt. n.27(C). Judge Bennett agreed with Nawanna's argument that, U.S.S.G. § 2D1.1, cmt. n.27(c), embodies the Guidelines' unsupported justification for the 10-to-1 ratio. As argued in Nawanna's sentencing memorandum, "because today's methamphetamine is substantially pure, purity is not a proxy for relative culpability," citing DEA, 2017 National Drug Threat Assessment 70 (Oct. 2017), concerning average purity of one gram of methamphetamine. Judge Bennett granted Nawanna a downward variance from 360 months to life, to 132 months imprisonment on the basis of his disagreement with the methamphetamine Guidelines. United States v. Nawanna, 321 F. Supp. 3d at 947, 950-51 (N.D. Iowa, May 1, 2018).

In United States v. Robinson, No. 3:21-CR-14, 2022 U.S. Dist. LEXIS 231041 (S.D. Miss. Dec. 23, 2022), attached as Exhibit 3, District Judge Carlton Reeves states, "[T]he issue is fairly straight forward. The U.S. Sentencing Guidelines use drug purity as a proxy for a defendant's culpability. The Guidelines says, in relevant part, "the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." U.S.S.G. § 2D1.1, cmt. n.27(C). As a result, the Guidelines make a distinction between "methamphetamine" and "actual methamphetamine." Id. § 2D1.1(c). Judge Reeves further states, "defendants caught with actual methamphetamine get longer sentences than defendants

14

caught with methamphetamine mixture. No other drug is punished severely based on purity," citing United States v. Hayes, 948 F.Supp. 2d 1009, 1025 (N.D. Iowa 2013)(citation omitted). To make the point clearer, Judge Reeves provided a distinction between the base offenses for pure methamphetamine and methamphetamine mixture. Judge Reeves states, "[T]he distinction is significant to Mr. Robinson. Because he possessed 214.4 grams of especially pure methamphetamine, the Guidelines indicate that he should have a 'base offense level' of 32. U.S.S.G. § 2D1.1(c)(4). In contrast, if Mr. Robinson was deemed to have possessed 214.4 of methamphetamine mixture, the Guidelines indicates that his base offense level would be 26. Id. § 2D1.1(c)(7). Although the six level difference may not look like much to a layperson, it corresponds to additional months (if not years) in prison."

In Robinson, the United States concedes that the Sentencing Guidelines' "Drug Quantity Table weighs 'Methamphetamine (actual)' ten times more heavily that 'Methamphetamine' for the purposes of calculating a defendant's base offense level under Section 2D1.1." Docket No. 90 at 3. In conclusion, Judge Reeves (along with other district judges) agrees that "the methamphetamine Guidelines should be given less deference than Guidelines that were properly crafted with empirical data and institutional expertise," citing Hayes, 948 F. Supp. 2d at 1012; United States v. Goodman, 556 F. Supp. 2d 1002, 1016 (D. Neb. 2008)("A variance is appropriate in view of the fact that the [methamphetamine] Guidelines at issue were developed pursuant to statutory directive and not based on empirical

evidence.").

The Supreme Court has repeatedly held that a district court may disagree with the Guidelines range indicated by the drug quantity table where the resulting sentence would be "greater than necessary to achieve § 3553(a)'s purposes." Kimbrough, 552 U.S. at 110. The Fifth Circuit has affirmed policy-based disagreements in methamphetamine cases. See e.g., United States v. Valdez, 268 F. App'x 293, 297 (5th Cir. 2008)(holding, in methamphetamine case, that "district judge can disagree with the Guidelines' policy that purity is indictive of role or that purity is adequately provided for in [the defendant's] base level."). Relying other district judges decisions in methamphetamine cases, Judge Reeves granted Robinson a downward variance to base offense level 26 rather than level 32. In the instant case, before imposing Aguilar's sentence, this Court stated in pertinent part, "I would love to give you a variance because I don't like giving life sentences out, but it is hard for me to do that when you stand there making your statement to the court." Id. The Court declined to give Aguilar the two or three level reduction for acceptance of responsibility because he attempted to minimize his role in the offense. And though such act of minimizing ones role in criminal activities deprive a defendant of the acceptance of responsibility benefits of two or three levels reduction in the base offense level, Aguilar is extremely remorseful of his criminal actions. He failed to express such at the plea hearing, and a lot of factors contributed to his act of minimizing his role.

Fear, arrogance, and stupidity played a significant role;

the fear of being punished more severely depending on the role he admitted to, while being arrogant and dishonest about his criminal activities. Today, Aguilar regretted not accepting full responsibility at the guilty plea hearing, and hope this Court would allow him to do so now. See Exhibit 4 (Aguilar's Affidavit). Under Amendment 810, this Court can consider Aguilar's contrition expressed in his Affidavit, and with its broad discretion, afford Aguilar the two point reduction in his base offense level. This, along with any disagreement with the methamphetamine Guidelines, provides the Court with extraordinary reasons to reduce Aguilar's base offense level from 43.

This Court can also consider the fact that, prior to the entry of the guilty plea, the government had offered Aguilar a plea deal of nine years. See e.g., United States v. Stockton, 2021 WL 1060347, at *14 (D. Md. Mar. 17, 2021). In Stockton, Judge Hollander inquired what a defendant convicted of a drug conspiracy resulting in a shooting would receive as a sentence today. There, Judge Hollander found a recent case, United States v. Antoine, No. PWG-190140 (D. Md. Jul. 8, 2020), in which "the defendant was involved in a drug trafficking organization in Baltimore, and confessed to the intentional shooting and killing of an individual in relation to the drug trafficking conspiracy" to be instructive. Stockton, 2021 WL 1060347, at *1. Judge Hollander observed that, in Antoine, although "the defendant was the shooter[,]...the government ha[d] agreed to a term of imprisonment ranging between 20 and 25 years." Id. Judge Hollander found the imprisonment range of 20 and 25 years in the plea agreement "a good indicator of the

government's perspective" on what is an appropriate sentence for such a crime today. Id. at *14, n.10. And, Judge Hollander granted compassionate release on this ground.

Aguilar pleaded guilty without the benefits of a plea agreement. However, prior to the entry of his plea, it is Aguilar's understanding that the government had offered a nine-year plea deal. Although it is beyond that phase of the case to discuss plea deals, Aguilar request that this Court take such plea deal into consideration as instructive in this manner. The nine-year plea deal is an indication from the government's perspective of what sentence is sufficient for Aguilar's crime, and role in the offense.

4.  An Unwarranted Sentencing Disparity Between Aguilar's Life Sentence and Sentences imposed by this Court for Methamphetamine

Section 3553(a)(6) represents a need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty for similar conduct. In Kimbrough v. United States, 552 U.S. 85, 91 (2007), the Supreme Court emphasized that "unwarranted disparities between offenders and the concern that such disparities would result in imposing sentences 'greater than necessary' to achieve the objectives of sentencing was an important factor for district courts to consider."

Multiple district courts have concluded that an enormous disparity between a sentence a defendant received and the sentence he would have received today, can constitute an

"extraordinary and compelling" reason for relief under §
3582(c)(1)(A). See § 3553(a)(6). Such a enormous disparity
occurs in Aguilar's case, when compared with other
methamphetamine cases in which this Court imposed Guidelines
sentences--all less than life imprisonment.

Some of these cases involved defendants with severe
criminal history, whom were convicted after trial, thus, did
not receive a three point reduction for acceptance of
responsibility. Nevertheless, these defendants received much
more lenient terms of imprisonment than Aguilar for similar
conduct--i.e. conspiracy to distribute 500 grams or more of
methamphetamine with mixture, and 50 grams or more of actual
(pure) methamphetamine.

For example, in United States v. Allison, 4:19-cr-309
(ALM), the defendant was convicted after a guilt plea for
similar conduct as Aguilar, but was sentenced to 60 months. In
United States v. Dozier, No. 4:14-cr-108 (3)(ALM), the
defendant was convicted after a guilty plea of 500 grams or
more of methamphetamine and 50 grams or more of actual
methamphetamine. Dozier was sentenced to 215 months; see also,
United States v. Hammer, No. 4:15-cr-56 (ALM)(convicted of 500
grams or more of methamphetamine, and 50 grams or more of
actual methamphetamine, and sentenced to 120 months); United
States v. Monrajas, No. 4:14-cr-49 (ALM)(same); United States
v. Hernandez, No. 4:18-cr-70 (ALM), convicted of 500 grams or
more of meth, and 50 grams or more of actual meth, and
sentenced to 162 months.

In United States v. Mendoza, 4:06-cr-314 (14)(ALM), the
defendant was convicted by a jury for conspiracy to distribute

19

500 grams or more of meth, and 50 grams or more of actual meth. At sentencing, the court imposed a 360 months term of imprisonment. Mendoza did not get the benefits of a three point reduction in his base offense under § 3E1.1 because he went to trial. In United States v. Sandoval, 4:17-cr-122 (ALM), the defendant was convicted of identical statutes as Aguilar upon a plea of guilty. However, at sentencing, this Court imposed a term of 100 months imprisonment. In United States v. Hill, 4:18-cr-233 (ALM), the defendant was convicted under the same statutory provision and drug type as Aguilar. And at sentencing, this Court sentenced Hill to 149 months.

In the following cases, this Court imposed terms of imprisonment  for identical statues of conviction for methamphetamine, to much lesser terms of imprisonment for all defendants, than the life imprisonment term the Court imposed on Aguilar.

In United States v. Rodriguez, 4:10-cr-242 (ALM), the defendant was sentenced to 168 months for similar conduct. See also United States v. Mendoza-Garibay, 4:13-cr-00281 (ALM)(sentenced to 250 months); United States v. Orozo-Ramirez, 4:14-cr-147 (ALM)(sentenced to 175 months); United States v. Macias, 4:07-cr-91 (ALM)(sentenced to 328 months which was later reduced to 264 months); United States v. Degante, 4:17-cr-00075 (ALM)(sentenced to 340 months); United States v. Rath, 4:05-cr-076 (ALM)(sentenced to 302 months, with 84 months for § 924(c)); United States v. Rudd, 4:14-cr-00140 (ALM)(sentenced to 168 months, which was later reduced to 131 months); United States v. Escandon, 4:12-cr-264 (ALM)(sentenced to 262 months); United States v. Ysassi, 4:19-

20

cr-001 (ALM)(sentenced to 180 months); United States v. Sikes, 4:12-cr-211 (ALM)(sentenced to 84 months); United States v. Morales-Alcaraz, 4:14-cr-147-4 )ALM)(sentenced to 168 months.

However, see United States v. Pierre, 4:10-cr-36 (ALM). In Pierre, the defendant was convicted by a jury for the same statutory provision Aguilar pleaded guilty. At Pierre's sentencing hearing, this Court imposed a term of 264 months. While in United States v. Garcia, 4:02-cr-100 (15), Garcia was convicted by a jury for conspiracy to distribute 500 grams or more of methamphetamine mixture, and 50 grams or more of actual methamphetamine. At Garcia's sentencing hearing, the Court increased his base offense level two points for obstruction of justice. Thus, Garcia did not receive a three point reduction for acceptance of responsibility, and he received a two point increase in his base offense level for obstruction of justice. Nevertheless, that five point difference in Garcia's case produced a much lesser sentence than Aguilar's life sentence for similar conduct.

Moreover, Aguilar has no criminal history points, while majority of the defendants cases above includes defendants with serious criminal history score--even some in category VI. The unwarranted sentencing disparity here constitutes an extraordinary and compelling reason that warrants reduction in sentence. This Court expressed its concern and its disfavor of imposing a life sentence. Thus, with the extraordinary and compelling reasons raised in this motion, the Court can provide a sense of justice here, where a first-time non-violent drug offender was sentenced much harsher than defendants who pleaded guilty to murder, or were found guilty

for murder by a jury. See e.g. United States v. Qadar, 2021 U.S. Dist LEXIS 136980 (EDNY July 22, 2021)(noting that the average federal murder sentence in fiscal year 2020 was approximately 21 years); see also, U.S. Sentencing Comm., Interactive Data Analyzer, https://llida.ussc.gov/analytics/saw.dll? Dashboard (last visited May 9, 2022)(showing the median sentence length for murder for fiscal years 2015 through 2021 was 240 months, the median length of imprisonment was 240 months, the average sentence length was 262 months and the average length of imprisonment was 263 months).

Most notable here, is that Aguilar's codefendants received lesser terms than life imprisonment, albeit they were convicted of the same conspiracy and relatively the same quantity of methamphetamine--with criminal history. For example, Omar Portillo-Ruiz received 120 months; Daniel Yobani-Duarte received 168 months; Pardo-Pardo received 168 months; Christian Tafolla-Garcia received 360 months; and Heber Centeno received 360 months. The sentences imposed upon Aguilar's codefendants demonstrated that an unwarranted sentencing disparity occurred herein. Aguilar was sentenced harsher than defendants who were convicted after trial for similar drug quantity, but also, defendants with lengthy criminal histories. See United States v. Ledezma-Rodriguez, No. 03:00-cr-00071 (S.D. Iowa July 14, 2020).

Ledezma-Rodriguez was convicted by a jury for drug trafficking. In his compassionate release proceeding, the district Judge states:

The defendant's life sentence for a non-violent
drug trafficking would be laughable if only there
was not a real person on the receiving end.

The judge agreed with Ledezma-Rodriguez that "there is
not a district judge in this country who would see defendant's
record and conclude a life sentence is appropriate." The court
concluded that "it understood the importance of finality in
criminal proceeding, yet even so, justice has a role, too.

This Court had voiced its concern about imposing a life
sentence on Aguilar. To reiterate, the Court stated, "I would
love to give you a variance because I don't like giving life
sentences out, but it is hard for me to do that when you stand
there making your statement to the court." The Ledezma-
Rodriguez court cited, U.S. Sentencing Comm'n, Life Sentences
in the Federal System 4 (2015)(finding "a life sentence is
rare in drug trafficking cases, having been imposed in less
than one-third of one percent of all drug trafficking cases"
in 2013). Accordingly, the statutory standard of §
3582(c)(1)(A) allows this Court to review the totality of
Aguilar's circumstances presented herein.

5.  Section 3553(a) Factors that Warrants
    Adequate Reconsideration

Aguilar is a more mature and responsible person than who
he was at the time of his crimes. Over the years since he has
been incarcerated, and despite having had no realistic hope of
release, Aguilar has done everything in his power to

23

rehabilitate himself. He cannot engage in all BOP programs available, because 80% of the programs are in English, which he doesn't speak, understand, or read fluently. He remains remorseful and contrite and has fully accepted responsibility for his crimes. And he has suffered a great deal in prison that words cannot express.

Notwithstanding his circumstances and the harsh conditions of his confinement, Aguilar has maintain an extraordinary positive outlook and attitude and has sought to improve himself on a daily basis. Among other things, Aguilar successfully completed numerous First Step Act programs, even though he cannot benefit from the home confinement credits earned upon completion of these programs due to the length of his sentence, and being in deportation status. He has completed Consumer Math, Consumer Banking, Consumer Taxes, Consumer Budgeting and Career Prep. Aguilar has completed reentry oriented programs such as Commercial Driving, Fork Lift Operator, and Bucket Safety. Importantly, is that Aguilar has developed reentry skills that will contribute to him being a productive member upon returning to Mexico's society [if] relief is granted and his sentence is reduced.

As difficult as it is with no realistic hope of leaving prison, Aguilar utilizes his time effectively, focusing on growth and development. He constantly focuses on ways he can help the younger generation in his family to escape the destructive paths he had taken.

The First Step Act requires the Bureau of Prisons to implement a risk and needs assessment system. Risk refers to the likelihood that each individual inmate will reoffend or

recidivate after release. This risk assessment system is called PATTERN, and is used to identify "who" is most at risk, measured as high, medium, low or minimum risk of recidivism. The BOP assessed Aguilar at "Low Risk Recidivism" level. This, along with the fact that Aguilar will be deported if he's ever being released from prison, is proof he poses no danger to the public.

"[H]arsh punishment can have a deterrent effect, but deterrence alone cannot justify disproportionate punishment: The inquiry focuses on whether a person deserves such punishment, not simply on whether punishment would serve a utilitarian goal." Rummel, 445 U.S. at 228 (Powell, J., dissenting). It would be troubling to say that a first time offender as Aguilar will not be given a chance to learn from his mistakes.

If reduction in sentence is granted, Aguilar, upon release, Aguilar would reside with his mother in Mexico. At present date his mother is suffering from multiple medical maladies. And just recently, she fell and broke her arm, which makes it much more difficult for her to care for herself. Aguilar's siblings assisted periodically in providing a degree of care for his mother, but they have families of their own to care for in the United States. His priority upon release (if that opportunity is ever granted) is his mother's health and wellbeing.

## Conclusion

For all the foregoing reasons, Defendant Ignacio Aguilar-

25

Cardenas respectfully ask this Court to reduce his sentence to a term (as his codefendants) that is sufficient but not greater than necessary to achieve the purposes of sentencing.

Dated this 1̸7 day of _Mayo_ 2023

    Respectfully submitted

    *Ignacio Aguilar-Cardenas*
    Ignacio Aguilar-Cardenas