# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| *Plaintiff,* § | |
| § | Civil Action No. 4: 14-cr-81 |
| v. § | Judge Mazzant |
| § | |
| IGNACIO AGUILAR-CARDENAS (12), § | |
| § | |
| *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. #678). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **DENIED.**

### BACKGROUND

On July 28, 2015, Defendant Ignacio Aguilar-Cardenas pleaded guilty to Conspiracy to Possess with the Intent to Manufacture and Distribute Methamphetamine in violation of 21 U.S.C. § 846 (Dkt. #530 at p. 4). Because Defendant pleaded guilty without a plea agreement two days before trial, the Court informed him that he would not receive acceptance of responsibility points (Dkt. #530). Based on Defendant's offense level and criminal history, the Court determined that Defendant's sentencing guideline range was life imprisonment (Dkt. #530 at p. 11). Accordingly, and after due consideration of the § 3553 factors, on March 7, 2016, the Court sentenced Defendant to life imprisonment and imposed a five-year term of supervised release (Dkt. #541).

On January 21, 2025, Defendant filed the instant Motion. Through it, he seeks a reduction of sentence or compassionate release under 18 U.S.C. § 3582(c)(1)(A). In support, he alleges two reasons, which he posts are "extraordinary and compelling": (1) an unusually long sentence; and

(2) his family circumstances (Dkt. #678). Defendant also asks the Court to consider his remorse for his actions, low likelihood of recidivism, personal development through "self-improved studies," and his responsibilities as a worker in the correctional facility's commissary (Dkt. #678 at pp. 13–15). At bottom, Defendant petitions the Court to reduce his life sentence by one-third of its overall term (Dkt. #678 at p. 17).

The Court notes that this is not the Defendant's first attempt to reduce his sentence or obtain compassionate release. The Court has denied his previous efforts (*See* Dkt. #651; Dkt. #661; Dkt. #667). This attempt is equally unpersuasive. For the reasons that follow, Defendant's Motion should be denied.

## LEGAL STANDARD

### I.    18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in relevant part, states:

> (A)    the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they

      are applicable, if it finds that—

    (i)    extraordinary and compelling reasons warrant such a reduction; or

    (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons" itself, Congress delegated its authority to the United States Sentencing Commission (the "Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP" *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

---

[1] This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines (the "Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons that could warrant compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.     Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to

---

[2] The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory . . . we must enforce this procedural rule"). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (cleaned up); *see also Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up and citations omitted) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

III. **U.S.S.G.'s Policy Statement**

  A. **Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))**

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D). First,

5

whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 291–92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021) (quotations omitted).

6

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

7

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons*, 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and

---

[3] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

8

domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### B. Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C. Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

> (A)   The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

---

[4] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5] End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[7] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

9

> (B)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C)   The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D)   The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F.Supp.3d 233, 237–38 (E.D.N.Y. 2023) (finding that "[w]ithout medical evidence" of the "father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Id.* The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan.

23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

### D. Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. § 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E. Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release

11

motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F. Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2024) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV. The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among

12

similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V. The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

---

[8] 18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

13

## ANALYSIS

I. **Defendant has met § 3582(c)(1)(A)'s exhaustion requirement.**

First, the Court addresses whether Defendant has exhausted all administrative remedies available to him, as § 3582(c)(1)(A) requires. He has. The Court may not modify a sentence under § 3582(c)(1)(A)(i) unless the Director of the BOP so properly requests, or the Defendant has exhausted all administrative remedies. 18 U.S.C. § 3582(c)(1)(A). A defendant exhausts their administrative remedies when either: (1) the warden of a defendant's carceral facility denies a defendant's request; or (2) a defendant has waited thirty days without receiving a response to a request. *Id*. Here, the former applies. On October 23, 2024, Defendant submitted a request to the warden of his facility, seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Dkt. #678-1). Approximately two weeks later, the warden denied his request (Dkt. #678-1). Therefore, Defendant has met § 3582(c)(1)(A)'s exhaustion requirement. *See id*.

II. **Defendant has not met § 3582(c)(1)(A)'s requirement that "extraordinary and compelling reasons" warrant a sentence reduction.**

Defendant's request falls under U.S.S.G. §§ 1B1.13(b)(3) and (6). That is, he claims two reasons warrant his release: (1) that his mother is incapacitated and he is the only caregiver, *see* U.S.S.G. § 1B1.13(b)(3); and (2) he has receive an unusually long sentence, *see* U.S.S.G. § 1B1.13(b)(6). As the following will demonstrate, Defendant has not carried his burden to show that "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i). Thus, he is not entitled to any relief.

### A. Defendant's Sentence

The Court begins with Defendant's first argument. That is, his belief that the Court imposed an unusually long sentence (Dkt. #687 at p. 7). Relying upon the Sentencing

14

Commission's June 2024 Report on the Disproportionate Methamphetamine Guidelines, Defendant asserts that "the 10:1 ratio between meth mixture and actual meth is severely harsh and produced a disproportionate sentence" (Dkt. #678 at p. 7).

For an unusually long sentence to qualify as an extraordinary and compelling circumstance, the defendant must: (1) be serving an unusually long sentence; and (2) have served at least 10 years of his sentence. U.S.S.G. § 1B1.13(b)(6). Further, there must have been a change in the law that "produces a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id*. While the Sentencing Commission's June 2024 report might support Defendant's argument that he received an unusually long sentence, neither of the remaining two elements are satisfied. To date, Defendant has served just over nine years of his sentence (Dkt. #541). Consequently, Defendant's circumstances do not meet § 1B1.13(b)(6)'s second requirement. Additionally, methamphetamine sentencing law remains unchanged. And in his Motion, Defendant cited no authority indicating a change in the statutory maximum for a 21 U.S.C. § 846 violation based on 21 U.S.C. § 841 (*See* Dkt. #678). One does not exist because the law has not changed. Therefore, here, § 1B1.13(b)(6)'s third requirement is also not satisfied.

Because Defendant has not served at least ten years of his sentence, and because there has been no change in the applicable federal law, Defendant's sentence does not qualify as an extraordinary and compelling reason to warrant sentence reduction.

### B. Defendant's Family Circumstances

The Court turns to Defendant's second argument. That is, his assertion that his family circumstances warrant sentence reduction. The Court disagrees. Defendant claims that his mother, who resides in Mexico, is "very fragile and ill" (Dkt. #678 at p. 13). As a result, he argues that the Court should release him so that he may tend to her (Dkt. #678 at p. 13). Family

15

circumstances may qualify as an extraordinary and compelling reason to warrant sentence reduction if: (1) the person in need of care is the defendant's parent; (2) the defendant is the only available caregiver; and (3) the person is incapacitated. *See* U.S.S.G. § 1B1.13(b)(3)(C). Here, the first element is satisfied, but the second and third are not. Defendant does not provide the Court with sufficient evidence that he is the only available caregiver to his mother or that his mother is incapacitated. Thus, the Court will not grant his Motion on this basis.

Even though his siblings in Mexico currently care for his mother, Defendant maintains that his mother's health constitutes an extraordinary and compelling reason that warrants sentence reduction because his siblings cannot provide the "full around the clock caregiver assistance" their mother requires (Dkt. #678 at p. 13). However, Defendant did not provide the Court with any proof of his mother's ailments to show that she is incapacitated[9] and has put forward no specific evidence[10] of his siblings' inability to provide care. Defendant notes that his siblings have busy schedules that impact their ability to care for Defendant's mother, but that does little to move the needle in Defendant's favor. Nothing in the record suggests that his siblings cannot continue to care for Defendant's mother. And nothing aside from Defendant's conclusory statements suggests that his mother is incapacitated. Consequently, Defendant has not carried his burden under

---

[9] *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases suggesting that at least some evidence is required to conclude an individual is "incapacitated" for purposes of § 1B1.13(b)(3)(C)); *United States v. Romano*, 707 F. Supp. 3d 233, 237–38 (E.D.N.Y. 2023) (finding that "[w]ithout medical evidence" of defendant's "father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver").

[10] *United States v. Lopez*, No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (affirming denial of compassionate release where defendant did not demonstrate his parents were "in serious need of his care" and neglected to "explain why his other siblings could not take care of his parents, and he failed to allege the death or incapacitation of any current caretaker").

U.S.S.G. § 1B1.13(b)(3)(C). Thus, though the Court is sympathetic to Defendant's position, his family circumstances cannot serve as a basis to reduce his sentence.

\*     \*     \*

Because Defendant has not shown that extraordinary and compelling circumstances warrant his release, Defendant's Motion must be denied. No less, the Court continues to analyze the § 3553(a) factors, under which Defendant is most assuredly not entitled to release.

### III. The 18 U.S.C. § 3553(a) factors do not support Defendant's Motion for Compassionate Release.

Even assuming that Defendant's circumstances were extraordinary and compelling, the Court would still decline to reduce his sentence or grant him compassionate release because Defendant cannot show that the § 3553(a) factors weigh in his favor.

Defendant argues that the § 3553(a) factors weigh in his favor. They do not. In support of his argument to the contrary, Defendant notes his behavior and employment in prison, rehabilitation efforts, and comparative sentences for other offenders (Dkt. #678 at pp. 13–16). Defendant claims that he is trustworthy as evidenced by his employment in the commissary, which he claims has helped him develop the ability to be a team leader (Dkt. #678 at p. 14).

Defendant's arguments are insufficient to carry his burden. After weighing the sentencing factors, the Court finds that the § 3533(a) factors do not weigh in favor of release or sentence reduction. Granting Defendant's release would not reflect the seriousness of the offense of which he was convicted, promote respect for the law, provide just punishment for his offense, nor adequately deter criminal conduct. *See Chambliss*, 948 F.3d at 694. While it appears that Defendant is using his time in prison to improve himself, "rehabilitation alone is insufficient to grant a

defendant's motion for compassionate release." *See Jean*, 108 F.4th at 279. Therefore, Defendant's Motion must be denied.

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless a "narrow exception[]" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3852(c)). Compassionate release is an exception, but a defendant must comply with the procedural and substantive requirements of 18 U.S.C. § 3852(c)(1)(A) for a court to modify a sentence. Here, Defendant failed to meet the controlling substantive requirements for compassionate release set forth in 18 U.S.C. § 3852(c)(1)(A)(i). Therefore, even if the § 3553 sentencing factors had weighed in Defendant's favor, the Court must deny the motion.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3852(c)(1)(A) (Dkt. #678) is hereby **DENIED**.

**IT IS SO ORDERED.**

SIGNED this 24th day of June, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE